l. Thank you. Our next case in the morning will be appeal number 22-1026 ABC Diamonds Incorporated v. Hartford Casualty Insurance Company. We're going to first hear from counsel for Appellant Mr. Gomez. Mr. Gomez can you hear me? Yes, your honor. Can you hear me? Yes I can. Mr. Freeman is present in the courtroom. Mr. Gomez I'll recognize you for your appellant's argument. Thank you your honor. Good morning and may it please the court. My name is Adam Gomez. I represent the appellant ABC Diamonds Inc. I just want to recognize at the outset of this morning's discussion that there are a variety and a number of decisions that have already been issued in these kinds of cases both within the circuit and nationwide also at the state level. These cases discuss the direct physical loss issue. They discuss the virus exclusion issues and they are laid out chapter and verse at length in the papers. But what we believe this appeal shows is that despite the number of decisions there still are unanswered questions because different policies issued by different insurers don't always line up. And so we took this appeal for guidance. Would you agree that the policy language here is essentially materially identical to the policy provision in Sandy Point? I would not your honor and that's where I'm heading directly. I believe that the holding in Sandy Point and its progeny all of the cases that refer back to Sandy Point as kind of the poll star for these decisions had materially different policy language on the threshold issue of whether the loss of access occupancy or use of property constitutes direct physical loss of not direct physical loss to that property. That's the distinction that I'd like to discuss this morning. As I noted and as you noted your honor with respect to your question the decisions in this circuit and many of the ones that have been cited by Hartford either flow directly from Sandy Point and the other two cases that were decided along with it or fail to mention the distinction in policies that cover direct physical loss to property versus direct physical loss of property. Now I am not here to argue that Sandy Point is not the law and I'm not here to argue that the terms of that policy and the facts that appeared on that complaint but instead what we are asking this court to address are the distinctions between ABC Diamond's policy and the policies in Sandy Point Crescent and Lee. What about I'm sorry what about the decision in Bradley Hotel wasn't that policy language identical to that Bradley Hotel relies on Sandy Point without discussion of the distinction in the policy language. So in that respect your honor I would submit that there was an issue that has not been raised nor specifically addressed that this appeal does that was not presented in Bradley in Bradley Hotel. So unlike these cases that we just that we just referenced Sandy Point Lee Crescent Bradley Hotel and there are your honor a number of them the policy here does not ensure direct physical loss to property it ensures direct physical loss of property and we know under Illinois law that every word in an insurance policy needs to be given meaning and these words while prepositions should be no different they need to be accorded their meaning. So what's the distinction because in Sandy Point we didn't focus on the two that wasn't an issue it was the direct physical loss required a physical alteration to the property and it's the same direct physical loss language is in the policy here. It is your honor and what I would submit is that what changes the outcome in this policy versus Sandy Point is the use of two verses of and my explanation for that is is one that comes from precedent nationally both before and during the COVID-19 pandemic. What I would submit is that while a policy like the one in Sandy Point that says or ensures direct physical loss to property refers to a cause of the loss or an action upon that property loss of property refers to something different it speaks to the effect of an event on property. Okay Mr. Gomez that I think you got your finger right on it and thanks for that. What you just said one second ago is important loss of property okay but what you deleted was the word physical. No and and and the word physical applies in both of those different policy languages right whether if you take those two together right you got to take those together and then they precede the different prepositions. They do they certainly do there's no I'm not here to deny that my my point on how the preposition changes how we read physical into those into those policies is that in a two policy if we can refer to that as shorthand the physicality has to be visited on the property it's something that actually happens to the property a tree falls through the roof there's a flood that comes through the property it's something that actually occurs to the property. In a physical loss of policy the physicality refers to the effect a physical loss of access a physical restriction on the use a physical restriction on the layout or the scheme of the property all of which is what was alleged in our second amendment complaint as physical restrictions or physical alterations that occurred and caused a loss of the property. So I want to be clear I don't want to read physical out of the policy I'm not suggesting that the court read physical out of the prop out of the policy but that physicality requirement is modified by the preposition as to whether it's an action upon the property or it or or whether it defines the effect of the loss on the relationship to property. And and like I said you know like I said earlier would it matter how was their physical loss here whether it's of or to there still has to be direct physical loss which we clearly defined in Sandy Point what that means. So the physical loss in this case was a physical loss of being able to occupy and use that property. One of the distinctions I think that's important to draw between many of the cases that were decided post Sandy Sandy Sandy Point and this case is that those were essential businesses businesses where people could actually still go there in limited in limited ways to be sure. But in the case of ABC Diamond there was no access there were not allowed to access the property because they were a non-essential business customers vendors employees could not be on the property because of the government shutdown orders. And you know I think an example illustrates the nuance distinction between loss of and loss to in this context. If the government issues these orders and people can't use their properties that's effectively the same as if the government were to take possession of the property post police officers in front of the door and change the locks. It's the same result but one has something actually being done to the property whereas the other is is tantamount to just a constructive loss of use or possession or occupancy. So if let's let's suppose that we credit the distinctions you're drawing what then about the virus exception. Absolutely. So the thing to keep in mind with the virus exclusion is that there are many policies that issues policies that have been discussed in this circuit where there are virus exclusions but they are not all created equal and it was not addressed specifically below. I understand this court can but I just wanted to point that out. You know some virus exclusion versions address the term virus others or define it. Some don't. Some identify the requisite causation. Others don't. There are a myriad of differences and those differences relate directly to the clarity and the scope of the exclusion. So while one version of the virus exclusion in one case may apply it doesn't mean that all virus exclusions in all other cases apply and that's a truism that's illustrated directly by the differences between this case and the Masha the Mashallah decision because in the Mashallah decision there was an independent standalone exclusion dedicated specifically to virus. In this case there's a catch-all exclusion where virus is included with with occurrences like fungi wet rot dry rot all of which if you read the exclusion in the totality clearly apply to an event that occurs on the property not anywhere else and that is an allegation that we specifically made in the second amended complaint that there was no contamination of the property. I was trying to answer the question your honor I apologize for going over my time. Thank you Mr. Gomez. We'll give you a brief time for rebuttal. We're now going to move to argument from the appellee Mr. Freeman. Good morning your honors. Good morning. May it please the court I'm Jonathan Fryman on behalf of Hartford Casualty. As your honors noted there's two issues here. There's the direct physical loss issue and there's the virus exclusion issue. I'd like to address both of them. As I understand Mr. Gomez's argument there's a significant difference between a policy that says direct physical loss of and a policy that says direct physical loss to. Let me start with precedent. First of all this court in three separate decisions has addressed policies that say you have the same language as this case direct physical loss of. Judge St. Eve you recently wrote in East Coast Entertainment that one had that exact language. Same is true in Paradigm Care. Same is true in Bradley Hotel. So we have three different binding decisions by previous panels of this court on that language. And East Coast didn't just rely on Sandy Point. We addressed the distinction. You did and your honor the decision there was cognizant directly or indirectly of the fact that appellate courts nationwide federal and state have been unanimous on this issue. In fact at this point as of yesterday there were 64 separate appellate panels of federal and state courts nationwide all unanimous all finding that physical in the context of physical loss in the COVID-19 context meant that loss of use was not covered. Not one dissenting judge on any of those panels. Now UPenn has got this website that allows access. Is that information on that website? Yes I don't know if it's up to date as of yesterday. We keep our own tally but I'm happy to provide all of the decisions. Obviously we noted all of them as of the time of the briefing that we thought were relevant and have provided to 28 J letters to this court to keep the court up to date. We stopped at some point because quite honestly they've become redundant when you have dozens and dozens of unanimous appellate panels. It's not a new issue and a number of the circuits are now issuing these decisions without any oral argument in summary affirmances because this is established law. I think there are eight different circuits. Eight different circuits. That's right your honor. We have the second circuit. We have the fourth circuit. The fifth circuit. The sixth circuit. This circuit. The eighth circuit. The ninth circuit. The tenth circuit. And the eleventh circuit have all ruled that direct physical loss, actually some of them don't have the word direct, but physical loss requires what you would think it requires. It requires that there be something that has happened to the property that is physical in nature. The loss itself must be physical. And that's the customary things that property in general discovers. None of those decisions are turning on whether the word that follows is on, of, for, to etc. The preposition doesn't matter. It's the adjective that matters here because it's the physicality that is at the core. And that's true across the decisions. And it's true, as Mr. Gomez noted, that not every single decision that deals with a policy that says direct physical loss of, you know, says, oh, let's look at the distinction between of and to and whether it matters. Some of them do. Some of them do that. And they all come out the same way. They all say it doesn't matter. But it doesn't matter because even the cases that don't look at that decision have still looked at the language and have found that the language in the context of the pandemic and the governmental orders issued in the wake of the pandemic do not provide coverage here. Again, East Coast Entertainment, Paradigm Care, Bradley Hotel. There was something that Mr. Gomez mentioned that I want to respond to. He said a lot of these decisions deal with essential businesses. This one wasn't. This was a jewelry store. It's true that a lot of them deal with essential businesses, but not all of them and a whole heck of a lot of them don't. East Coast Entertainment. That was movie theaters. Movie theaters were not deemed essential businesses by the governor's orders. They were closed, period. Mashallah. The Mashallah case is a case involving, there are two plaintiffs there, one of them is a jewelry store, just like ABC Diamonds. You can look through these dozens and dozens of appellate cases nationwide from federal and state courts. You'll find plenty of cases involving businesses that were just fully closed. Mr. Gomez has a point in his brief, so I want to address just for a moment, and this comes out of the Sandy Point decision, one of the original decisions by this court in this area about, well, if something becomes completely uninhabitable, then you really sort of physically lost it in that sense. As Bradley Hotel notes, I'm sorry, as Sandy Point notes and Bradley Hotel does as well, that's true if something is truly uninhabitable. As this court put it, if the property is barred for all uses by all persons, maybe it said all people, but that's the essential phrase there. This wasn't. We know what the executive order said. The executive order said that people could still go in, even to non-essential businesses, for certain routine functions. They could go in for security. They could go in to take care of the inventory. ABC Diamonds was a jewelry store. They don't deny that they were able to sell online. They could have gone in and packed up jewelry and shipped it to someone, just like a lot of online jewelry dealers. There were a lot of ways in which people, in fact, could and did access the property. There's no reason to go down that sideline that Sandy Point acknowledged might exist in some kind of extreme circumstances, because that's not what we face here. Yeah. Mr. Freeman, thank you for raising that. I thought about that a little bit. You do this for a living. You're going to be able to come up with a better example than I am, but is an example of uninhabitability leading to a loss, physical use loss, is that like a situation like there's a gas leak or something, and they just say, hey, look, nobody in these four or five stores, you can't go in them. We've got to figure out what's going on here. That's exactly the situation. That's exactly the situation that's recognized in Sandy Point and is discussed in that case. There have been similar kinds of situations in other jurisdictions, like if a property has been used as a meth lab, methamphetamine production, the noxious fumes that enter into it make it impossible to in any way inhabit the place. No one can go in there. Basically, if the only way to go into a place is in a hazmat suit in order to fix it, you've then reached a point where a place is uninhabitable. But anything short of that, if people can still go in, look, this place, this jewelry store, didn't face any different situation than pharmacies did, than hospitals did, than restaurants that serve takeout, right? There were, yes, the virus was around, and there were orders that were limiting things, but it didn't make it uninhabitable any more than it made the CVS uninhabitable. What the government orders did is they restricted certain usages of properties in order to protect us, in order to protect the virus from spreading from person to person. It had nothing to do with property. There was no physical loss of property. Of course, it's likely, your honors, as you know, that as this court has opened and closed, been virtual, not virtual, people have walked into this courtroom, some of them, I'm sure, carrying the virus. But look, this lectern is not physically damaged. Your chairs are not physically damaged. This ceiling is not physically lost. It's all still here, just as it was before March 2020. We don't have direct physical loss of this premises any more than we do of the jewelry store. This isn't uninhabitable any more than the jewelry store was uninhabitable. Mr. Freiman, perhaps a related question. When we're talking about regulation of use being pervasive, that would somehow equate with physical loss, if we're looking to determine that, should we look to takings clause jurisprudence for guidance? Where should we look for guidance? I think you should look to the guidance of the cases under state law, looking at the point at which something becomes so uninhabitable that it counts as physical loss. I don't think there's any need to go to a federal constitutional jurisprudence or anything of that nature. In fact, the states have addressed this. Different states have different rules about precisely where that line is. We're nowhere near that line. We know that from this court's decisions in Sandy Hook, as well as the Illinois appellate court's decisions, which have been unanimous. We now have six of them from the Illinois appellate courts. There are four of them from the first district, two of them from the second district. They all say, no- Did the ABW case deal with the of language rather than to? Wasn't it exactly what's at issue here? That's exactly right, Judge St. Eve, as did the ABW development case. So we'd have to tell the Illinois courts they're wrong? You would have to tell them they're wrong. You would. And, of course, your job is to assume that the intermediate appellate court is correct unless there's a strong reason to think to the contrary. There's not. All of the appellate courts nationwide have said the same thing. I see I only have a minute and a half left. I would love just to take that minute and a half to address the virus exclusion, if that's okay. Mishala is binding precedent in this circuit. Mishala finds that the virus exclusion applies. Nobody could reasonably doubt that the government orders were prompted by the virus that causes COVID-19. That's why everyone acted. That's why governors acted. Again, to protect us from the virus. There is no question that the Illinois appellate court in the Lee decision, which we provided to your honors through a 28J letter, has said the same thing. Lee follows Mishala. Lee says this is a question of Illinois law that we are answering here, and it's answered affirmatively. Mr. Gomez notes in the abstract that there are differences in the wording of some policies. That's true. There are differences in the wording of some policies. The broadest policy you'll find, the broadest language you'll find is the one in this policy. Directly or indirectly, a loss or damage that is caused directly or indirectly by a virus, among other things. Yes, there's also bacteria. There's also fungi. All kinds of things that can hurt people, hurt property in one way or another. Regardless of how widespread the loss is, that's what the policy says. The presence of the virus, any loss caused directly or indirectly by the presence of a virus, even if widespread. So there's no question that this falls within Mishala. There's no question that this falls within Lee. And for both of those independent reasons, this court should affirm Judge Feinerman's well-reasoned decision. Thank you. Thank you, Mr. Freiman. Mr. Gomez will recognize you for rebuttal for a minute. Thank you, Your Honor. With respect to the virus exclusion, what I would point out in disagreeing with counsel's assertion that this is the widest possible virus exclusion is one need only read further beyond the reference to the virus to know that it is referencing conditions that occur at the property. There are references to remediation efforts occurring at, quote, the premises, quote, the building. And that is not what was alleged. There's no allegation of the virus contaminating this property. So that is a question that was not decided below and one that was not decided in Mishala because Mishala did not have those references. The second thing I would note in rebuttal is while there are a number of cases that have involved the policy language of loss of, none of them have actually grappled with the difference between loss to and loss of. There is no textual analysis of those differences. The courts that have in this country looked at that difference have said that there is a significant or material distinction between the two. Thank you, Your Honor. Thank you, Mr. Gomez. Thank you, Mr. Freiman. The case will be taken under advisement.